IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

NORMA MORRIS,

    Plaintiff,

vs.                                                                                                      1:22-cv-00318-LF

MARTIN O'MALLEY,[1] Commissioner
of the Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Norma Morris' Motion to Reverse or Remand, filed on January 9, 2023. Doc. 23. The Acting Commissioner Kilolo Kijakazi filed her response on April 12, 2023. Doc. 26. Ms. Morris filed her reply on April 26, 2023. Doc. 27. The parties consented to my entering final judgment in this case. Docs. 3, 5. Having read the briefing and being fully advised in the premises, I find that the Administrative Law Judge (ALJ) applied the correct legal standards, and her decision is supported by substantial evidence. I therefore DENY Ms. Morris' motion and AFFIRM the Commissioner's decision.

### I.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] Martin O'Malley became the Commissioner of Social Security on December 18, 2023. Pursuant to FED. R. CIV. P. 25(d), Mr. O'Malley is automatically substituted for Acting Commissioner Kilolo Kijakazi as the defendant in this case.

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'"  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.     **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140

(1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background Facts and Procedural Posture

Norma Morris, a 61-year-old woman with one year of college, lives in Bernalillo, New Mexico with her son. AR 35, 282, 464.[4] Ms. Morris lived with her father before he passed in 2016. AR 282, 490. Ms. Morris has worked as an executive finance controller and personal assistant for a prominent family in New Mexico,[5] and as a caregiver for her father. AR 171, 193, 231, 1187–91. Ms. Morris applied for Disability Insurance Benefits ("DIB") on June 25, 2014, alleging disability starting April 1, 2010, because of left foot problems, rheumatoid arthritis,

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Documents 13-1 through 13-20 comprise the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[5] Vocational experts at the hearings described Ms. Morris' past work as administrative officer, administrative assistant, and a composite job, including order clerk, home housekeeper and general houseworker. AR 51, 491, 1196.

carpal tunnel syndrome, problems with her knees and legs, and right arm pain. AR 63, 132–38, 166, 170. At a hearing on February 7, 2022, Ms. Morris amended her alleged onset date to June 23, 2012. AR 1150. The ALJ accepted this amendment. *Id.*

The Social Security Administration ("SSA") denied Ms. Morris' claim initially and on reconsideration. AR 61–81. Ms. Morris requested a hearing before an ALJ. AR 90. On February 9, 2017, ALJ Doug Gabbard held a hearing. AR 28–60. ALJ Gabbard issued his unfavorable decision on April 13, 2017, and the Appeals Council denied Ms. Morris' request for review on January 17, 2018. AR 1–6, 12–27. This Court reviewed ALJ Gabbard's decision and remanded for reconsideration on July 8, 2019. AR 1130–42. On May 14, 2020, ALJ Lillian Richter held a hearing. AR 1234–74. ALJ Richter issued an unfavorable decision on October 22, 2020. AR 442–60, 1202–21. Ms. Morris appealed that decision as well, and the Court granted an unopposed motion by the Social Security Administration and remanded for further proceedings. AR 1220–27. ALJ Jennifer Fellabaum held a hearing on February 7, 2022, AR 1176–1200, and issued an unfavorable decision on February 25, 2022, AR 1146–75. It is this third decision that is now before the Court.

ALJ Fellabaum found that Ms. Morris met the insured status requirements of the Social Security Act through December 31, 2014. AR 1152. At step one, the ALJ found that Ms. Morris had not engaged in substantial, gainful activity between her alleged onset date of June 23, 2012, through her date last insured of December 31, 2014, the time period covered by this decision. *Id*. At step two, the ALJ found that through the date last insured, Ms. Morris' obesity, osteoarthritis of the right knee with meniscal tear, degenerative disc disease, and osteoarthritis of the left foot were severe impairments during this period. *Id*. The ALJ further found that Ms. Morris had impairments due to hypertension, hypothyroidism, osteopenia, migraines, left foot fracture, foot

4

callouses, left hip dysplasia, right carpal tunnel syndrome, bilateral hand osteoarthritis, peripheral neuropathy, anxiety, and depression that were not severe through the date last insured. AR 1153.  At step three, the ALJ found that none of Ms. Morris' impairments, alone or in combination, met or medically equaled a Listing.  AR 1155.  Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Morris' RFC.  AR 1155–66.  The ALJ found that through the date last insured, Ms. Morris had the RFC to

> lift, carry, push, and pull up to 20 pounds occasionally and up to 10 pounds frequently; stand and/or walk for two hours total during an eight hour day; sit for six hours total in an eight hour day, but would need to get up and stand or walk for five minutes every one hour while remaining on task; occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl; never climb ladders, ropes, or scaffolds, or be exposed to unprotected heights, hazardous machinery, or concentrated exposure to extreme cold; and occasionally use foot controls bilaterally.  The claimant could not perform fast paced assembly line work.

AR 1155–56.

At step four, the ALJ concluded that through the date last insured, Ms. Morris was capable of performing her past relevant work as an order clerk.  AR 1166.  Thus, the ALJ explained, Ms. Morris "was not under a disability, as defined in the Social Security Act, at any time from June 23, 2012, the alleged onset date, through December 31, 2014, the date last insured."  AR 1167.  Because the ALJ found Ms. Morris not disabled at step four, she did not analyze whether Ms. Morris was able to perform work that existed in sufficient numbers in the national economy at step five.

Ms. Morris did not file written exceptions to the Appeals Council, nor did the Appeals Council review the ALJ's decision of its own accord.  Ms. Morris timely filed her appeal to this Court on April 27, 2022.  Doc. 1.[6]

---

[6] If the Appeals Council does not review the ALJ's decision, the decision becomes final on the 61st day after notice of the decision.  A claimant has 60 days from that date to file an appeal in federal district court.  20 C.F.R. §§ 404.981, 404.984; *see also* AR 1318.

## IV. Ms. Morris' Claims

Ms. Morris raises two main arguments for reversing and remanding this case:

1. The ALJ failed to properly consider the opinion of Ms. Morris' treating physician Dr. Lilia Pedrego, Doc. 23 at 22–24; and

2. The ALJ failed to properly consider consultative examining and medical expert Dr. Omar Hussamy's opinion, *id.* at 25–26.

Ms. Morris also contends that this case should be remanded for an immediate award of benefits. *Id.* at 26–27. These claims are without merit.

## V. Analysis

### A. The ALJ properly considered Dr. Pedrego's opinion.

Ms. Morris contends that the ALJ failed to properly consider the opinion of her treating physician, Dr. Pedrego. Treating physicians may offer a medical opinion with regard to the claimant's symptoms, diagnosis, and prognosis, as well as work-related physical and mental limitations. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (citing 20 C.F.R. § 404.1527(a)(2)). A "medical opinion" is a statement "from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Pursuant to the "treating physician rule,"[7] "the Commissioner will generally give more weight to medical opinions from

---

[7]Although the Social Security Administration has rescinded the treating physician rule, that rescission only applies to cases filed on or after March 27, 2017. Because this case was filed in June 2014, the treating physician rule still applies. *See* SSR 96-2p, 2017 WL 3928298 (March 27, 2017).

6

treating sources than those from non-treating sources." *Langley*, 373 F.3d at 1119; 20 C.F.R § 404.1527(c)(2).[8]

When presented with a treating medical source opinion, the ALJ must first determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). A medical source opinion is entitled to "controlling weight," if the medical opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 20 C.F.R. § 404.1527(b)(2); *see also Langley*, 373 F.3d at 1119. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Watkins*, 350 F.3d at 1300.

Even if an opinion is not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighted using all of the factors provided in § 404.1527." *Id*. Those factors include:

> (1) the length of the treatment relationship and the frequency of examination;
> (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (10th Cir. 2003); *see also* 20 C.F.R. § 404.1527(c)(2)–(6). While an ALJ is not required to discuss each factor, an ALJ must give good reasons for the weight assigned to a treating physician's opinion, reasons "that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

---

[8] The SSA issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5,844-01 (Jan. 18, 2017) (final rules). Ms. Morris protectively filed her DIB claim on June 25, 2014. AR 132–38. Thus, the Court reviews the ALJ's consideration of the medical opinions under 20 C.F.R. § 404.1527, not 20 C.F.R. § 404.1520c.

opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotations and citations omitted). Further, an ALJ must give specific, legitimate reasons for rejecting a treating physician's opinion completely. *Id.*

Dr. Pedrego saw Ms. Morris for the first time on December 12, 2014, approximately two weeks before her date last insured. AR 287, 294 (noting "[p]atient is a 52 yof that is here to establish care"), 1159. That same day, Dr. Pedrego filled out a New Mexico Taxation and Revenue Department – Motor Vehicle Division Certificate of Eligibility for Parking Placard for Mobility Impaired Individuals for Ms. Morris. AR 1079. In the "Physician Medical Statement & Certification" section of the application, Dr. Pedrego checked two boxes indicating that Ms. Morris had the following limitations:

> cannot walk without the use of a brace, cane or crutch or without assistance from another person, a prosthetic device, a wheelchair or other assistive device; [and]
>
> is so severely limited in the ability to walk due to an arthritic, neurologic or orthopedic condition that the person cannot ascend or descend more than 10 stair steps.

AR 1079. Dr. Pedrego noted that these conditions were temporary and that the placard should be issued for twelve months. *Id.* The ALJ analyzed the parking placard certification as Dr. Pedrego's medical opinion.[9] AR 1162. The parties also accepted the signed parking certification

---

[9] It is not clear that the parking placard certification is a "medical opinion" for the purposes of a social security disability determination. In an unpublished decision, a panel of the Tenth Circuit found no error in the ALJ's failure to credit a treating physician's completion of a handicapped parking application as an opinion because a similar finding was not in the treatment notes. *Duncan v. Colvin,* 608 F. App'x 566, 574 (10th Cir. 2015); *see also Randolph v. Colvin*, 2014 WL 4930495, at *8 (N.D. Okla. July 2, 2014) (rejecting the argument that the handicapped parking application was treating physician opinion evidence that required discussion and analysis); *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir.2009) (disability parking placard was not relevant because of differing standards of disability); *Wilson v. Colvin*, 2014 WL 357052 (N.D. Okla. Jan. 31, 2014) (handicapped parking application with a check mark and no supporting examination notes or findings was not opinion evidence that ALJ was required to discuss); *Bryant v. Astrue*, 2010 WL 4628721 (D. Kan. Nov. 8, 2010) (treating physician's

8

as a medical opinion. *See* Doc. 23 at 10; Doc. 26 at 10. Because both parties addressed the placard certification as a medical opinion, the Court will assume without deciding that it is a "medical opinion" for the purposes of a social security disability determination.

The ALJ did not give controlling weight and instead accorded little weight to Dr. Pedrego's opinion. The ALJ reasoned:

> Dr. Pedrego saw the claimant for the first time on December 12, 2014, and musculoskeletal examination showed trace edema bilaterally but no tenderness (3F/11). Dr. Pedrego made no mention of any difficulty with ambulation. The only treatment she offered was a prescription for Tramadol, which does not appear consistent with the degree of limitation opined. The claimant was still acting as the primary caregiver for her father, which suggests greater exertional capacity. Moreover, Dr. Pedrego's opinion appears to restate the claimant's subjective complaints and limitations. It is also inconsistent with Dr. Maes' clinical findings and opinion.

AR 1162.

Ms. Morris contends that the ALJ failed to properly consider Dr. Pedrego's opinion. Doc. 23 at 22–24. I disagree. "In addition to considering the treatment relationship, specialization, and other factors, the ALJ looks at supportability and consistency." *Bridges on behalf of R.M.B. v. Comm'r, SSA*, 814 F. App'x 362, 369 (10th Cir. 2020). "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that medical opinion. The more explanation a source provides for a medical opinion, the more weight [the ALJ] will give that

---

comment on application for a permanent disabled parking placard was not "so probative as to require discussion"); *Livingston v. Astrue*, 2010 WL 5851124 (S.D. Fla. Feb. 26, 2010) (failure to mention parking permit application was not reversible error in part because such applications are "generally of little relevance to a formal disability analysis"); *Parmley v. Astrue*, 2008 WL 3850250 (E.D. Ky. Aug. 15, 2008) (ALJ was correct to disregard a handicap parking form completed by a treating physician because it did not indicate that the claimant was incapable of working); *Meador v. Barnhart*, 2006 WL 1319627 (W.D. Va. May 9, 2006) (same). *But see Grabczyk v. Astrue*, 2010 WL 3894113 (D. Colo. Sept. 30, 2010) (parking permit application was treating physician opinion evidence, and ALJ did not give sufficient reasons for rejection); *Bailey v. Astrue*, 2010 WL 3834406 (E.D. Okla. Sept. 4, 2010) (same).

medical opinion." *Id.*; 20 C.F.R. § 404.1527(c)(3). And "[t]he more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." *Bridges*, 814 F. App'x at 369; 20 C.F.R. § 404.1527.

The ALJ gave several reasons why Dr. Pedrego's medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not consistent with other substantial evidence.[10] AR 1162. The ALJ's reasons provide a proper basis for her refusal to give controlling weight and instead to give "little weight" to Dr. Pedrego's opinion on the parking placard certification.

First, addressing the length of the treatment relationship and the frequency of examination, the ALJ noted that Dr. Pedrego saw Ms. Morris for the first time on December 12, 2014—19 days prior to the expiration of Ms. Morris' insured status. AR 1159, 1162. Second, the ALJ noted that the nature and extent of the treatment provided was not consistent with the limitations in the opinion. AR 1162. Dr. Pedrego's musculoskeletal examination showed only

---

[10] Ms. Morris acknowledges that the ALJ gave six reasons for discounting Dr. Pedrego's opinion. Doc. 23 at 23. Ms. Morris presents several arguments attacking the ALJ's reasons for discounting Dr. Pedrego's opinion in footnotes. Doc. 23 at 23 n.12–17. "But arguments raised in a perfunctory manner, such as in a footnote, are waived." *In re C.W. Min. Co.*, 740 F.3d 548, 564 (10th Cir. 2014) (internal citation and quotations omitted). The Court therefore does not address the arguments made in the footnotes.

Further, Ms. Morris presents evidence in the footnotes in an effort to attack the ALJ's reasons for discounting Dr. Pedrego's opinion. For example, Ms. Morris raises the fact that she admitted taking her father's morphine without a prescription to treat her pain, Doc. 23 at 23 n.12, an MRI was scheduled for January of 2015, *id.* at n.13, and that her son did most of the work in caring for her father, *id.* at 15. While "[t]he record must demonstrate that the ALJ considered all of the evidence," there is no requirement that an ALJ "discuss every piece of evidence." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir.2014). Here, the record demonstrates that the ALJ considered evidence with regard to Dr. Pedrego's prescription of Tramadol for pain, the results of the February 6, 2015 MRI, and that Ms. Morris' son helped with taking care of her father. AR 1157, 1159. That Ms. Morris used her father's morphine does not undermine the ALJ's assessment of Dr. Pedrego's opinion.

trace edema (swelling) bilaterally but no tenderness. *Id*. The treatment she offered was a prescription for Tramadol, which, as the ALJ observed, "does not appear consistent with the degree of limitation opined" and was conservative compared to the limitations alleged in the parking placard certification. *Id.* Third, the ALJ explained that the opinion on the parking placard certification is not supported by relevant evidence. "Dr. Pedrego made no mention of any difficulty with ambulation" in her treatment notes. AR 1159, 1162. Further, the ALJ observed that Dr. Pedrego's opinion appears to restate [Ms. Morris'] subjective complaints and limitations" rather than being supported by the physical examination. AR 1162. Dr. Pedrego's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques.

The ALJ further noted that Dr. Pedrego's opinion was not consistent with other evidence in the record as a whole. For example, the ALJ stated that Ms. Morris "was still acting as the primary care giver for her father," which suggested greater exertional capacity than a person who cannot walk without the use of a brace, cane, or crutch or without assistance from another person, a wheelchair, or some other assistive device. AR 1160, 1162. The ALJ also noted that the opinion was inconsistent with Dr. Levi Maes' clinical findings and opinion, which was issued approximately three months earlier. Dr. Maes performed a consultative examination in September of 2014 and found that Ms. Morris was able to get on and off the exam table without significant restrictions, was able to remove clothing without significant limitations, and did not use an assistive device with ambulation. AR 282–83, 1158. Although Dr. Maes noted that Ms. Morris walked with an occasional limp, which he assessed was "likely secondary to obesity," AR 282, 1158, Dr. Maes found on examination that Ms. Morris had "no abnormality of the spine or any joint and normal strength, sensation, and reflexes in all extremities." AR 283–85, 1158. Dr.

Maes opined that Ms. Morris could perform standing, walking, lifting, and carrying at the "medium level,"[11] and that Ms. Morris did not require an assistive device. AR 285, 1162. Ms. Morris does not take issue with the ALJ's analysis of Dr. Maes' opinion.

Finding that Dr. Pedrego's opinion was not supported or consistent, the ALJ properly found that Dr. Pedrego's opinion was not entitled to controlling weight. Additionally, the ALJ gave specific, legitimate reasons based on the relevant factors for rejecting Dr. Pedrego's opinion. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (construing the ALJ's decision to assign little weight to an opinion as an effective rejection of it). The ALJ properly considered Dr. Pedrego's opinion, and remand is not warranted on this basis.

Ms. Morris acknowledges that the ALJ gave several reasons for disregarding Dr. Pedrego's opinion. *See* Doc. 23 at 23. Ms. Morris contends, however, that the ALJ failed to cite medical evidence that contradicts Dr. Pedrego's opinion and makes five specific arguments in support of this contention. Doc. 23 at 24. First, Ms. Morris argues that Dr. Pedrego's failure to "explicitly reference trouble with ambulation in the 12/12/2014 treatment note does not contradict the opinion in the handicapped parking application." *Id*. "Nowhere does the treatment note say that [Ms. Morris] is walking well or without difficulty."[12] Doc. 23 at 24. This

---

[11] The ALJ found that Dr. Maes' assessment of "medium level" was inappropriate "given clinical findings of obesity, knee tenderness, and weakness prior to the DLI and subsequent evidence of right knee, left foot, and lumbar spine degenerative changes." AR 1162.

[12] Citing *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993) for the proposition that "[t]he absence of evidence is not evidence," Ms. Morris criticizes the ALJ's observation that "Dr. Pedrego made no mention of any difficulty with ambulation" in her treatment notes. Doc. 23 at 24. In *Thompson*, the Tenth Circuit found that the ALJ erred in determining that the claimant could perform a full range of sedentary work based on the absence of contraindication in the medical records at step five. *Thompson*, 978 F.2d at 1491. The Tenth Circuit explained that "[t]he ALJ's reliance on an omission effectively shifts the burden back to the claimant. It is not her burden, however, to prove she cannot work at any level lower than her past relevant work; it is the Secretary's burden to prove that she can." *Id*. Here, the ALJ was determining the

12

argument misunderstands that standard under which the ALJ must determine the weight to give a treating physician's opinion.

Instead of conducting a *de novo* review of the ALJ's findings, the Court must determine whether his or her findings are supported by "more than a mere scintilla" of evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In doing so, the Court must ask whether the ALJ has identified an internal discrepancy that is "seemingly" inconsistent. *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007). "To the extent a doctor provides conflicting information about a claimant's [] capabilities, it logically seems appropriate for the ALJ to consider this conflicting information when determining how much weight to give that doctor's opinion. Indeed, the regulations instruct that an ALJ should consider inconsistencies in the record." *Rush v. Saul*, 389 F. Supp. 3d 957, 971 (D.N.M. 2019); *see also Pisciotta*, 500 F.3d at 1078 ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence.") (internal citation and quotation omitted).

Here, Dr. Pedrego did not mention that Ms. Morris had difficulty ambulating, and noted that her musculoskeletal examination showed only trace edema but no tenderness. Further, the only treatment Dr. Pedrego offered Ms. Morris was a pain killer. Dr. Pedrego did not recommend that Ms. Morris use a brace, crutches, or any other assistive device. Thus, the ALJ identified an internal discrepancy in the treatment notes that is seemingly inconsistent with Dr. Pedrego's opinion in the parking placard certification that Ms. Morris "cannot walk without the

---

weight to give Dr. Pedrego's opinion in preparation for assessing Ms. Morris' RFC prior to step four. The ALJ was not assessing whether Ms. Morris could do the full range of a particular level of work at step five. Accordingly, the *Thompson* court's admonishment that "the absence of evidence is not evidence" does not apply when an ALJ is tasked with determining whether a doctor's treatment notes support or are consistent with that doctor's medical opinion. *See Rush v. Saul*, 389 F. Supp. 3d 957, 971 (D.N.M. 2019).

13

use of a brace, cane or crutch or without assistance from another person, a prosthetic device, a wheelchair or other assistive device." AR 1079.  Ms. Morris does not direct the Court to any objective medical evidence that shows that Ms. Morris in fact had difficulty ambulating to the degree suggested on the parking placard certification[13] during the relevant time period.[14]

Second, Ms. Morris contends that "the factual statements contained in Dr. Pedrego's handicapped parking application (completed the same day as her 12/12/2014 treatment note) demonstrate difficulty ambulating."  Doc. 23 at 24.  Ms. Morris does not submit any legal authority to support the contention that statements made on the parking placard certification are objective medical evidence, and the Court rejects this argument.  Even if the Court were to accept that the statements made in the parking placard certification are objective medical evidence, as discussed above, the physical examination and treatment notes do not show a

---

[13] Ms. Morris mentions in a summary of the medical evidence that she had been wearing a knee brace since 2010.  Doc. 23 at 3.  Ms. Morris told Dr. Maes on September 20, 2014, that she injured her right knee "a few years back at work" and that she "used a brace at that time due to the pain."  AR 280.  There is also evidence in the record that Ms. Morris was using a knee brace during the relevant time period.  AR 298, 300.  However, Ms. Morris does not direct the Court to a doctor's recommendation or prescription for a knee brace.  Dr. Pedrego did not treat Ms. Morris' complaints with a knee brace and did not prescribe a knee brace or other assistive device in her treatment notes.  Further, while Ms. Morris used a knee brace, there is no objective medical evidence that Ms. Morris could not ambulate without the use of a brace during the relevant time period.

[14] In disability insurance benefits cases such as this one, the relevant time period is from the alleged onset date through the date the claimant was last insured. *See* SSR 83-20, 1983 WL 31249, at *1 ("The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations . . . .  A title II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition(s)."); 20 C.F.R. § 404.131(a) ("To establish a period of disability, you must have disability insured status in the quarter in which you become disabled or in a later quarter in which you are disabled."); *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348–49 (10th Cir. 1990) ("the relevant analysis is whether the claimant was actually disabled prior to the expiration of [his or her] insured status").  Here, the relevant time period is June 23, 2012 (the amended alleged onset date) through December 31, 2014 (the date Ms. Morris was last insured).

medical condition that would support the degree of limitation noted on the parking placard certification. Thus, the record reflects an evidentiary conflict that the ALJ is entitled to resolve and did so. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("The ALJ was entitled to resolve such evidentiary conflicts and did so."). The Court will not reweigh the evidence or displace the AJL's choice between two conflicting views. *Id.*

Third, Ms. Morris argues that the ALJ "provides no explanation for how Dr. Pedrego's treatment plan was inconsistent with [her][15] opinions." Doc. 23 at 24. The ALJ, however, had already noted that "the lack of treatment until just two months before the DLI [date last insured] and the very conservative nature of the treatment thereafter is not consistent with the degree of symptoms and limitations alleged." AR 1161. Specifically with respect to Dr. Pedrego, the ALJ noted that "[t]he only treatment [Dr. Pedrego] offered was a prescription for Tramadol, which does not appear consistent with the degree of limitation opined." AR 1162. In other words, the treatment offered was very conservative, and not consistent with the severe ambulatory limitations listed in the parking placard certification. The ALJ gave good reasons for finding that Dr. Pedrego's treatment plan was not consistent with the severity of the limitations stated in the parking placard certification.

Fourth, Ms. Morris argues that the ALJ failed to consider the similarities in Dr. Pedrego's and Dr. Maes' observation that Ms. Morris "has difficulty with ambulation." Doc. 23 at 24. She cites language from Dr. Maes' report that "[t]he claimant is a morbidly obese female who walks into the exam room with an occasional limp likely secondary to obesity. She is slow to get on and off the exam table . . . ." Doc. 23 at 24 (quoting AR 282). The ALJ discussed and compared

---

[15] Ms. Morris consistently refers to Dr. Pedrego as a man, but the ALJ referred to Dr. Pedrego as a woman, and the Court believes that Dr. Lilia Pedrego is a woman.

both Dr. Maes' opinion and Dr. Pedrego's opinion and found that they were, in fact, inconsistent, particularly given the severity of the limitations Dr. Pedrego found—that Ms. Morris could not walk without the use of a brace, cane or crutch or without assistance from another person, prosthetic device, wheelchair, or other assistive device.  AR 1158, 1162.  Three months earlier, Dr. Maes noted that Ms. Morris was not using any assistive devices when he examined her, and that she did not need any.  AR 283, 285.  Moreover, the ALJ did not take the position that Ms. Morris was not limited at all—only that she was not as severely limited as Dr. Pedrego opined in the parking placard certification.  The ALJ did not err in assessing Dr. Pedrego's opinion.

Finally, Ms. Morris argues that the ALJ fails to consider the "x-ray demonstrating moderate to severe degenerative arthritis and the MRI demonstrating moderate to severe osteoarthritis, impacts Dr. Pedrego's opinions."  *Id*.  Ms. Morris does not direct the Court to which MRI or x-ray[16] she is referring to.  Further, Ms. Morris does not explain how these x-rays

---

[16] An MRI on Ms. Morris' right knee was performed on February 6, 2015.  AR 292.  The MRI showed "moderate to advanced osteoarthritis with asymmetric joint space narrowing most pronounced in the anterior lateral aspect of the joint."  *Id*.  Another MRI was performed on August 15, 2016, showing mild scoliosis of Ms. Morris' lumbar spine and grade 1 spondylolisthesis.  AR 802.  Because Ms. Morris' date last insured is December 31, 2014, these MRIs were both performed outside of the relevant time period.  "Evidence outside the relevant time period may be considered to the extent that it assists the ALJ in determining disability during the relevant time period."  *Overstreet v. Astrue*, 2012 WL 996608, at *9 (N.D. Okla. Mar. 23, 2012) (unpublished) (citing *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004)); *Pyland v. Apfel*, 149 F3d 873, 877 (8th Cir. 1998) ("Evidence of a disability subsequent to the expiration of one's insured status can be relevant . . . in helping to elucidate a medical condition during the time for which benefits might be rewarded.").  Evidence outside of the relevant time period, however, is not dispositive.  A finding of disability based solely upon evidence outside the relevant time period "would be contrary to the Social Security Act, 42 U.S.C. §§ 416(i), 423(c), which requires proof of disability during the time for which it is claimed."  *Pyland*, 149 F.3d at 878.  Ms. Morris does not contend that the ALJ failed to consider evidence outside of the relevant time period in her ultimate disability determination, only as it relates to the evaluation of Dr. Pedrego's opinion.  Ms. Morris does not cite to any legal authority that provides that the ALJ is required to consider evidence outside of the relevant time period when evaluating a medical source opinion.  X-rays were taken on November 6, 2014, November 13, 2014, and on February

and the MRI undermine the ALJ's assessment of Dr. Pedrego's opinion. This argument is not developed, and the Court will not consider it. The Court will not manufacture a litigant's arguments for her, and issues raised only in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. *Mays v. Colvin*, 739 F.3d 569, 575–76 (10th Cir. 2014).

    B.  <u>The ALJ properly considered Dr. Hussamy's opinion</u>.

Ms. Morris contends that the ALJ errored by affording "little weight" to Dr. Hussamy's opinion on her ability to sit for four hours. Doc. 23 at 25–26. When evaluating the opinion of a non-treating, consultative physician, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(c). *See Lauxman v. Astrue*, 321 F. App'x 766, 768 (10th Cir. 2009); *see also Engelsman v. Colvyn*, 2014 WL 12796763, at *7 (D.N.M. Mar. 4, 2014), report and recommendation adopted, 2014 WL 12796815 (D.N.M. Apr. 7, 2014). Dr. Hussamy conducted a consultative examination of Ms. Morris on June 25, 2020. AR 1135–1144. Dr. Hussamy also testified at the hearing on February 7, 2022. AR 1178–86. Dr. Hussamy opined that Ms. Morris could sit for four hours at one time and four hours total in an eight-hour workday. AR 1136, 1182. The ALJ rejected Dr. Hussamy's opinion and instead found that Ms. Morris could sit for six hours in an eight-hour workday.[17] AR 1155.

The ALJ gave little weight to Dr. Hussamy's opinion that Ms. Morris was limited to sitting for four hours in an eight-hour day. AR 1165. The ALJ provided several reasons for

---

12, 2015. AR 303, 305–06. Treatment notes indicate that on November 6, 2014, x-rays were taken of both Ms. Morris' right knee and of her lumbar spine. AR 299. The Court cannot discern which x-ray Ms. Morris is referring to.

[17] The ALJ gave partial weight to other aspects of Dr. Hussamy's opinion; she only rejected his opinion that Ms. Morris could only sit for four hours in an eight-hour workday. AR 1165.

discounting Dr. Hussamy's opinion which are supported by substantial evidence. First, the ALJ found that Dr. Hussamy's reliance on rheumatoid arthritis as a cause for Ms. Morris' limitations was unfounded because "the record does not establish this condition as a medically determinable impairment even by 2019." *Id*. As discussed above, an ALJ may discount an opinion that is inconsistent with objective medical evidence. The ALJ further explained that while Dr. Hussamy's written opinion referred to right knee and low back arthritis as causing a limitation in sitting, "medical evidence prior to the DLI does not support this degree of limitation." *Id*. The ALJ explained that Ms. Morris's statements to Dr. Maes, Dr. Burkes, and Dr. Pedrego showed she complained primarily of pain with prolonged standing and walking, not sitting. *Id*. Also, Dr. Maes—who examined Ms. Morris during the relevant period—found Ms. Morris had no limitation in sitting. *Id*. The ALJ also observed that treatment notes prior to the DLI showed some tenderness and weakness "but not extensive every day swelling that would impact the claimant's ability to sit for six hours," and that "[l]ow back pain was not a primary complaint prior to the DLI." *Id.* In other words, Dr. Hussamy's opinion was not consistent with other substantial evidence in the record. The ALJ properly assessed Dr. Hussamy's opinion with regard to sitting, and remand is not warranted on this basis.

Ms. Morris contends that the ALJ failed to consider "significant back pathology that clearly relates back to before the date last insured." Doc. 23 at 25, 26. She points to an x-ray dated November 6, 2014,[18] and an MRI dated August 15, 2016—well after the DLI of December 31, 2014—"demonstrating significant back pathology." *Id*. The x-ray of the lumbar spine showed "some early degenerative joint and disk disease." AR 299. The MRI showed "grade 1

---

[18] The treatment notes indicate that on November 6, 2014, x-rays were taken of both Ms. Morris' right knee and of her lumbar spine. AR 299.

18

spondylolisthesis of L4 [and] L5 due to severe facet joint degenerative change."[19]  AR 802.  Ms. Morris argues that the ALJ failed to consider the "back pathology" that "existed prior to the date last insured that was subsequently confirmed by an MRI."  Doc. 23 at 25.  Ms. Morris, however, does not direct the Court to any evidence that the "back pathology" had any effect on her ability to sit, or that the degenerative joint and disk disease and spondylolisthesis limited her ability to sit to the degree opined by Dr. Hussamy.

Ms. Morris further argues that the ALJ failed to explain "how the absence of severe daily swelling" and "the fact that [Ms. Morris] complained mostly of pain walking and standing prior to the date last insured" are inconsistent with Dr. Hussamy's opinion.  Doc. 23 at 25.  This argument is without merit.  The discussion above demonstrates that the ALJ found that Dr. Hussamy's opinion was inconsistent with other evidence in the record.  The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability.  *Cainglit v. Barnhart*, 85 F. App'x 71, 76–77 (10th Cir. 2003).  Instead of directing the Court to evidence that supports a limitation in her sitting,[20] or discussing why the ALJ's reasons for discounting Dr. Hussamy's opinion are not supported by substantial evidence, Ms. Morris invites the Court to reweigh the

---

[19] "Spondylolisthesis is a condition that occurs when one vertebral body slips with respect to the adjacent vertebral body causing radicular or mechanical symptoms or pain.  It is graded based on the degree of slippage of one vertebral body on the adjacent vertebral body."  *See* https://www.ncbi.nlm.nih.gov/books/NBK430767/ (last visited 12/8/2023)

[20] Ms. Morris attempts to dispute the ALJ's assessment of Dr. Hussamy's opinion by offering the opinion of Han Vu Sheffler, PA, who first saw Ms. Morris in 2016 and offered an opinion as to her limitations in 2019.  AR 1163.  The ALJ gave PA Scheffler's opinion "little weight," and Ms. Morris did not object to this finding.  *Id.*; *see generally* Doc. 23.  PA Scheffler's opinion does not undermine the substantial evidence that supports the ALJ's discounting of Dr. Hussamy's opinion regarding Ms. Morris' ability to sit.

evidence, which the Court will not do.  The ALJ is tasked with weighing the evidence and to resolve evidentiary conflicts.

    C.  <u>The Request for Remand for an Immediate Award of Benefits is Denied</u>

Ms. Morris requests a remand for an immediate award of benefits.  Doc. 23 at 26.  "When a decision of the Secretary is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits."  *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993).  In this case, because the Court is affirming the Secretary's decision, the Court will not remand for further administrative proceedings or for an immediate award of benefits.  Ms. Morris' request for remand for an immediate award of benefits is denied.

## VI.  Conclusion

For the reasons stated above, I find that the ALJ applied the correct legal standards, and that her decision is supported by substantial evidence.

IT IS THEREFORE ORDERED that Ms. Morris's Motion to Reverse and Remand (Doc. 23) is DENIED, and the Commissioner's decision is AFFIRMED.

                                              _____
                                              Laura Fashing
                                              United States Magistrate Judge
                                              Presiding by Consent